IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2002

## STATE OF TENNESSEE v. MICHAEL DOUGLAS WILLIS

**Appeal from the Criminal Court for Campbell County**
**No. CR 10857     E. Shayne Sexton, Judge**

---

**No. E2002-00769-CCA-R3-CD**
**November 19, 2002**

---

The Defendant, Michael Douglas Willis, was charged with DUI, violating the open container law, and violating the implied consent law. A jury convicted the Defendant of violating the implied consent law but acquitted him of the other charges. The trial court subsequently overturned the jury's guilty verdict but nevertheless revoked the Defendant's license for one year for violating the implied consent law. The Defendant now appeals the trial court's revocation of his license. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Charles Herman, Assistant Public Defender, Jacksboro, Tennessee, for the appellant, Michael Douglas Willis.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William Paul Phillips, District Attorney General; and Michael O. Ripley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Before we address the merits of the Defendant's case, a careful parsing of Tennessee's implied consent law, Tennessee Code Annotated section 55-10-406, will be helpful. First, "[a]ny person who drives any motor vehicle in the state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood; provided, that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person was driving while under the influence of an intoxicant or drug . . . ." Tenn. Code Ann. § 55-10-406(a)(1). Thus, a driver who is stopped by a police officer for DUI is deemed to have consented to a blood or breath test for the determination of the driver's blood alcohol content, so long as the officer has "reasonable grounds" to believe the driver is DUI.

When a police officer requests a driver to submit to a test for the determination of his or her blood alcohol content, the police officer "shall, prior to conducting such test, advise the driver that refusal to submit to such test will result in the suspension of the driver's operator's license by the court . . . ." Tenn. Code Ann. § 55-10-406(a)(2).  If the driver is driving on a license which has been revoked, suspended or cancelled as a result of the driver having been convicted of one (or more) of certain enumerated offenses, the police officer shall further advise the driver that refusal to submit to the test "will, in addition, result in a fine and mandatory jail or workhouse sentence." Id.  In either event, "[t]he court having jurisdiction of the offense for which such driver was placed under arrest shall not have the authority to suspend the license of a driver who refused to submit to the test if the driver was not advised of the consequences of such refusal." Id.

If the driver is placed under arrest for DUI and refuses to submit to the test after having been requested to do so and after having been advised of the consequences of refusal, "the test shall not be given, and such person shall be charged with violating [the implied consent law]." Id. § 55-10-406(a)(3).  Thereafter, "[t]he determination as to whether a driver violated the [implied consent law] shall be made at the same time and by the same court as the one disposing of the offense for which such driver was placed under arrest." Id.

If the driver is determined to have violated the implied consent law, the court shall revoke the driver's license for a period of time designated in the statute. See id.  If, at the time the driver was stopped and arrested for DUI, the driver was not driving on a license which had been revoked, suspended, or cancelled as a result of a prior enumerated conviction, "the driver shall not be considered as having committed a criminal offense." Id.  If, however, the court or jury finds that the driver violated the implied consent law while driving on a license which had been revoked, suspended, or cancelled as a result of a prior enumerated conviction, "such driver commits a Class A misdemeanor and shall be fined not more than one thousand dollars ($1,000) and shall be sentenced to a minimum mandatory jail or workhouse sentence of five (5) days which shall be served consecutively, day for day, and which sentence cannot be suspended." Id.

Thus, before a driver may have his or her license revoked for violating the implied consent law, the police officer must have "reasonable grounds" to believe that the driver was driving while under the influence of an intoxicant or drug, and must advise the driver of the consequences of refusing to take the test, those consequences being more severe if the driver was driving on a license which was revoked, suspended, or cancelled as a result of a conviction of one (or more) specific offenses.  If the driver thereafter refuses to take the test, the driver "shall" be charged with violating the implied consent law.  If the driver is thereafter determined to have violated the implied consent law, his or her license "shall" be revoked for a designated period of time; additionally, criminal sanctions may be imposed if the driver was driving on a license which was revoked, suspended, or cancelled resulting from a conviction of one of the offenses specified in the statute.

We turn now to the facts of this case.  On December 28, 2000, the Defendant was arrested for DUI.  The arresting officer testified that he pulled the Defendant over after seeing him swerving on the road.  The officer stated that he noticed a strong odor of alcohol about the Defendant and

found a cup of liquid that smelled like whiskey in the center console of the car. The officer asked the Defendant to perform field sobriety tests. Based on the Defendant's performance of these tests, the police officer then asked the Defendant to consent to a test to determine the Defendant's blood alcohol content and informed the Defendant that, if the court found him guilty of refusing the test, the court would suspend his license for twelve months. The Defendant refused to consent to the test.

The Defendant was subsequently charged with DUI, violating the open container law, and violating the implied consent law. With respect to the latter charge, Count 2 of the indictment provides:

> . . . that [the Defendant] prior to the finding of this indictment, on or about December 28, 2000, in the County and State aforesaid, did unlawfully refuse to submit to a test for the purpose of determining the alcoholic or drug content of the said [Defendant's] blood, after having been arrested for violating T.C.A. § 55-10-401, and thereafter having been requested by a law enforcement officer to submit to such test and having been advised of the consequences for refusing to do so, in violation of T.C.A. § 55-10-406, all of which is against the peace and dignity of the State of Tennessee.
> And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present: that [the Defendant], at the time of the refusal aforesaid has previously been convicted of violation of T.C.A. § 55-10-401, § 39-13-213(a)(2), § 39-13-218, § 39-13-106, or § 55-10-418 or a similar offense in any other jurisdiction[,] all of which is against the peace and dignity of the State of Tennessee.

The jury convicted the Defendant of this charge. The trial court subsequently overturned the jury's verdict on the grounds that the proof did not demonstrate that the Defendant had been adequately informed of the consequences of refusing to consent to the test. Apparently, the trial court, as well as the litigants, were proceeding under the impression that, because Count 2 of the indictment referenced a prior conviction, it charged the Defendant with violating the implied consent law while driving on a revoked, suspended, or cancelled license, thereby subjecting him to criminal sanctions. The officer testified that the only consequence of which he warned the Defendant for refusing to take the test, was the suspension of his license. Because the trial court determined that the officer had not advised the Defendant that his refusal to submit to the test could result in criminal sanctions of a fine and mandatory sentence, the trial judge overturned the jury's verdict of guilt on this count of the indictment.

A careful review of the indictment reveals, however, that it makes no reference to the Defendant driving on a revoked, suspended or cancelled license, a necessary prerequisite to being found guilty of the <u>criminal</u> offense of violating the implied consent law. <u>See</u> Tenn. Code Ann. § 55-10-406(a)(3). As set forth above, a driver is not subject to the <u>criminal</u> sanctions referred to in subsection (a) of the implied consent statute unless he or she has one of the referenced prior convictions <u>and</u>, as a result thereof, was "driving on a revoked, suspended or cancelled license" at the time of the stop. <u>See</u> <u>id.</u> There is no proof in the record that the Defendant was driving on a revoked, suspended, or cancelled license at the time he was stopped. Indeed, the indictment does

not even include this element of the offense.  Accordingly, the trial court acted correctly in overturning the jury's verdict that the Defendant was guilty of a Class A misdemeanor for violating the implied consent law.

The Defendant's appeal arises from the trial court's subsequent action in ordering the Defendant's license revoked for a one-year period.  Specifically, the trial court entered an order providing as follows:

> . . . it appearing to the Court that the defendant having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to a test to determine the alcoholic or drug content of the defendant's blood and having been advised of the consequences for refusing to do so, did refuse to submit to said test, in violation of T.C.A. § 55-10-406, it is,
>
> THEREFORE, ORDERED that the defendant's driver's license is hereby revoked for a period of one year.

The Defendant now complains that, "[s]ince the defendant should have been advised according to Tennessee Code Annotated § 55-10-406[a](2), but was not, and the Judge dismissed the charge of Violation of Implied Consent Law, it was error for the Judge to then suspend the defendant's driver's license pursuant to Tennessee Code Annotated § 55-10-406[a](3)."

Initially, we disagree that the Defendant should have been advised by the arresting officer of anything in addition to what he was, in fact, advised.  Since there is no indication that the Defendant was driving on a revoked, suspended, or cancelled license at the time of his arrest, the arresting officer had no obligation to inform the Defendant of any consequences for refusing to take the test other than the suspension of his license.  This allegation by the Defendant is, accordingly, inaccurate.

The remaining issue is whether the indictment was sufficient to support the trial court's order of revocation.  As set forth above, the implied consent statute provides that, "[i]f such person having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to such test and advised of the consequences for refusing to do so, refuses to submit, the test shall not be given, and such person shall be charged with violating this subsection."  Tenn. Code Ann. § 55-10-406(a)(3) (emphasis added).  The Defendant was, in fact, charged with violating subsection (a) of Tennessee Code Annotated section 55-10-406, albeit the indictment includes a portion of the language necessary to subject the Defendant to criminal sanctions.  However, the language contained in the second paragraph of Count 2 of the indictment referencing the Defendant's prior conviction was, under the facts and circumstances of this case, mere surplusage.  The inclusion of surplusage, or unnecessary words, in an indictment does not render the indictment fatally defective.  See State v. Jones, 953 S.W.2d 695, 700 (Tenn. Crim. App. 1996).  The initial paragraph of Count 2 of the indictment adequately informed the Defendant that he was charged with violating the implied consent law; the surplusage contained in the second paragraph of the count did not negate that notice.

-4-

Accordingly, because the evidence was sufficient for the trial court to find that the Defendant violated the implied consent law by refusing to take the test after being told of the consequences attendant upon such refusal, the court was authorized to revoke the Defendant's license. See Tenn. Code Ann. § 55-10-406(a)(3) ("If the court finds that the driver violated the provisions of this subsection, . . . the court shall revoke the license of such driver . . . ."). The judgment of the trial court is therefore affirmed.

_____

DAVID H. WELLES, JUDGE